UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

Case No. 05-80291-CIV-RYSKAMP/VITUNAC

L.G. and K.G. on behalf of their minor
child, B.G.,

       Plaintiffs,

v.

THE SCHOOL BOARD OF PALM BEACH
COUNTY, FLORIDA, a political subdivision
of the STATE OF FLORIDA,

       Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's motion for summary judgment **[DE 57]**, filed on November 1, 2006. Plaintiffs filed a response **[DE 61]** on November 21, 2006. Defendant filed a reply **[DE 65]**, on December 1, 2006. On November 29, 2006, Plaintiffs filed their motion for summary judgment **[DE 62]**. Defendant responded **[DE 67]** on December 12, 2006. Plaintiff replied **[DE 68]** on December 19, 2006. The Court heard oral argument from the parties on January 9, 2007. Accordingly, the motions are now ripe for adjudication.

**I.   Introduction**

This is an action filed pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(a), appealing a final decision from the State of Florida, Division of Administrative Hearings, and to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131. The facts as pled in the Plaintiffs' complaint follow. Plaintiffs are the

1

adoptive parents of an 8-year old boy known in this litigation as "B.G."  *See* Compl. **[DE 1]**, at ¶¶ 7, 11.  B.G. has been deemed "severely emotionally disturbed," and has been diagnosed with, *inter alia*, Mood Disorder NOS, Impulse Control Disorder NOS, Attention Deficit Hyperactivity Disorder, Bipolar Disorder and Schizoaffective Disorder. *Id.* at ¶ 12 *et seq.*  Since the age of three years, B.G. has exhibited serious emotional, social and behavioral problems, and has been in and out of various educational institutions and hospitals in New York and Florida. *Id.*  In June, 2004, B.G. and his parents moved from New York to Florida, at which time they met with Defendant to discuss an "individualized education plan" ("IEP") for B.G. *Id.* at ¶¶ 38-41.  After due consideration (which included a review of an IEP developed in New York, that recommended a residential program), Defendant elected to implement B.G.'s IEP at Indian Ridge School ("Indian Ridge"), a therapeutic day school which serves the needs of severely emotionally disturbed students. *Id.* at ¶ 40.

In July, 2004, B.G. was hospitalized at Columbia Hospital after a violent episode at home. *Id*. at ¶¶ 42-43.  At the recommendation of B.G.'s treating psychologist, B.G.'s parents decided at that time to forego placement in Indian Ridge and to enroll him instead in Sandy Pines Hospital ("Sandy Pines"), a residential behavioral health facility. *Id.* at ¶¶ 44-47.  B.G. was admitted into Sandy Pines on July 12, 2004 and discharged on October 11, 2004. *Id.* at ¶ 48.  His behavior at Sandy Pines was "uncontrollable", and he did not show any signs of improvement. *Id.* at ¶¶ 51-67.  After his discharge from Sandy Pines, B.G. has been hospitalized a number of times, and has been in and out of two therapeutic day schools. *Id.* at ¶¶ 71-75.  He is currently enrolled in Tampa Bay Academy, a residential facility.

On March 7, 2005, Administrative Law Judge ("ALJ") Florence Synder Rivas entered a Final Order denying Plaintiffs' request for reimbursement for costs incurred at Sandy Pines.  Judge Rivas

also denied Plaintiffs' request to keep the record open in order to hear new facts regarding B.G.'s December, 2004 Baker Act hospitalization at the Fort Lauderdale Children's Hospital. Judge Rivas considered the evidence "related not to the matter of reimbursement, but instead related to the much broader matter of whether Petitioner should be provided residential treatment." Final Order (attached as Exh. "A" to Compl. **[DE 1]**), at 3-4.

## II.     Discussion

As an initial matter, there is confusion between the parties regarding the issue presented. Defendant argues that the issue is limited to reimbursement for B.G.'s admission into Sandy Pines. Plaintiffs, however, argue that the scope also includes whether the IEP offered a fair and appropriate education (FAPE). This Court's order denying Plaintiffs' motion to supplement the record **[DE 59]** on November 20, 2006 resolves this dispute. In that order, this Court explained:

> The final order of the ALJ states that the scope of the hearing was to determine whether Plaintiffs were entitled to reimbursement for costs incurred at Sandy Pines and not to litigate B.G.'s IEP, including whether the IEP should have authorized residential placement. Just after taking counsel's names for the record, the ALJ clarified the scope of the proceeding wherein the parties agreed that the issue would be whether Defendant must reimburse Plaintiffs for B.G.'s placement in Sandy Pines. (ALH Record Vol. 2 pg. 4-5). Later in the record, in regards to the admission of an incomplete medical record, counsel for the Plaintiffs stated that "we're not raising the issue of any future tuition reimbursement" in this case. (ALH Record Vol. III pg. 272). In fact, throughout the record, Plaintiffs' attorney clarified that the only issue for the hearing was reimbursement for B.G.'s placement at Sandy Pines. (ALH Record Vol. III pg. 289; Vol. IV pg. 356; Vol. V pg. 585-94; Vol. VII pg. 764). The ALJ stated "as I understand it, this is an issue about whether the law allows for public funding for your child's time at Sandy Pines. And that's the only issue before me." (ALH Record Vol. V pg. 640). At one point in the hearing, the ALJ stated that she did not care if the attorneys needed to present evidence for three days or three months so long as the record was properly developed and that the issue being decided was clear.

(Order Denying Motion to Supplement the Record **[DE 59]** at 4-5). Thus, this Court recognized that the issue presented in this litigation is limited exclusively to determining whether whether the

3

Defendant must reimburse the Plaintiffs for the expenses they incurred during B.G.'s stay at Sandy Pines.

### A.     Summary Judgment Standard

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).   The burden is not a heavy one; however, the non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that

would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Lawrence v. Wal-Mart Stores*, *Inc.,* 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (quoting *Celotex*, 477 U.S. at 324). Moreover, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

**B.     The IDEA and Reimbursement Cases**

Under the IDEA, disabled students are guaranteed a "free appropriate public education" (FAPE), which is defined as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program...." 20 U.S.C. § 1401(8); § 1412(a)(1).

Included in a FAPE is the requirement that the child be educated in the least restrictive means possible. 20 U.S.C. § 1412 (a)(5). This means that the school's goal must be to educate B.G. in an environment that is as close to a typical school education as possible but that will still give him an appropriate education.

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children

> with disabilities from the regular education environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

§ 1412(a)(5)(A). The statute forbids a state from funding a placement that fails to educate a child in the least restrictive means. § 1412(a)(5)(B).

The least restrictive environment is often an education in a regular public school supplemented with any special programs that are tailored to that child's specific needs. Examples include providing a teacher's aid to assist the child during class or having the child attend public school part time while taking speech therapy classes outside of the classroom. In some instances, however, a child cannot be educated in a public school atmosphere. In any event, the most restrictive educational means would be placement of a child in a full time residential facility.

In order to provide a disabled student with a free and appropriate education, a school board is responsible for developing an IEP for the student, through meetings held between the student's parents and various school officials. *See* 20 U.S.C. § 1414(d)(1)(A)-(B).

Under Section 1415(f), parents of a disabled child enrolled in private school are entitled to a due process hearing where they may challenge whether the proposed IEP provides their child with a free and appropriate education. Once a final order has been issued pursuant to the due process hearing, Section 1415(i)(2) allows the aggrieved party to appeal that decision in any district court regardless of the amount in controversy. On appeal, the party seeking reversal of the ALJ's determination bears the burden of proving that the IEP was inappropriate. *See E.W. v. School Bd. of Miami-Dade County*, 307 F. Supp. 2d 1363, 1369 (S.D. Fla. 2004). If the district court finds that the IEP provided the child with a free and appropriate education, judicial review ends; however, if the court concludes that a free and appropriate education was not provided, parents may seek

reimbursement from the school district for private school tuition under § 1412(a)(10)(C)(ii). *Id.* Specifically, Section 1412(a)(10)(C)(ii) states that "if the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C). *See also Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 15 (1993).

When a party does file suit in district court, the district court is required to receive the administrative proceeding records, additional evidence at the request of a party, and base its decision on the preponderance of the evidence in granting appropriate relief. 20 U.S.C. 1415(I)(2).

**1.      Level of Deference this Court must Give the ALJ's Decision**

In addition to the traditional summary judgment standard, this Court must also comply with the standard for reviewing an administrative decision in an IDEA case. This is not a bright line test; rather, it comprises a general rule, that leaves the exact level of deference to the reviewing judge. Generally, this Court must independently rule on the evidence developed at the administrative hearing applying the preponderance standard. U.S.C. § 1415(e)(2); *Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205-06 (1982). However, a court must not substitute its ideas of what constitutes sound educational policy for that of the school authorities. *Rowley* at 206. Thus, reviewing courts must give "due weight" to the determinations made at the state administrative hearing. *Id.*; *accord*, *Walker County School Dist. v. Bennett*, 203 F.3d 1293, 1297-98 (11th Cir. 2000). In doing so, the reviewing court can determine the amount of deference that it gives to the

administrative decision and is accordingly free to accept or reject the administrative findings. *Walker* at 1288-89.

Plaintiffs argue that this Court should not give any weight to the ALJ's findings because they argue that she is biased against parents in IDEA cases. Plaintiffs state that "[t]he decision distorts testimony, is completely unreliable and is biased." To support this assertion, Plaintiffs note that since 2000, this ALJ has never ruled in favor of the parents and argue that she ignored any evidence showing that a residential placement was necessary.

This is a concerning allegation made by Plaintiffs. This Court has read the entire record and does not see anything that would even remotely suggest that the ALJ was somehow biased against Plaintiffs. For one, she repeatedly clarified the scope of the hearing and stated that she wanted to make sure that all disputes were addressed. She also showed an immense sensitivity to B.G.'s parents throughout the hearing, a far cry from maliciously targeting them as Plaintiffs' brief suggests. Simply because she ultimately ruled against Plaintiffs position does not prove that she was biased against B.G.'s parents. Moreover, simply because she has not ruled in favor of parents suing this school district since 2000 does not prove bias. It may be that Defendant simply provides an excellent program for special needs students and that they have implemented the IDEA's requirements in each of those cases. It troubles this Court that Plaintiffs would make such an allegation when the record so clearly shows otherwise.

**2. The Plaintiffs are not Entitled to Reimbursement because they have Failed to Show that B.G.'s Attendance at Indian Ridge did not Provide a FAPE.**

In order to prove their claim for reimbursement, Plaintiffs much show by a preponderance of the evidence that the school failed to offer B.G. a FAPE by placing him in Indian Ridge as opposed

to Sandy Pines. If Plaintiffs can prove this first prong, then they must show that Sandy Pines did provide an appropriate education. 20 U.S.C. § 1412(a)(10)C); *School Comm. Of Burlington v. Depat. of Ed. Of Mass.*, 471 U.S. 359, 370 (1985). For the reasons stated below, this Court finds that Indian Ridge did provide a FAPE to B.G. and therefore, Plaintiffs' reimbursement claim is denied and the decision by the ALJ stands.

**a.    The ALJ's Decision**

The ALJ ruled that the Parents were unable to show that Indian Ridge did not provide a FAPE. The crux of Plaintiffs' argument hinges on the IEP developed in New York, just before B.G. moved to Florida. In that IEP, the New York school district recommended that B.G. be placed in a residential program. The ALJ determined that although a residential placement may have been the least restrictive environment in New York, it was not in Florida. The ALJ noted that the programs provided in Florida were more extensive than those available in New York. Indian Ridge students are eligible for both in school and at home services. This was particularly important since educational professionals had reported that B.G., although sometimes disruptive, was manageable at school and able to learn. It was his alleged at home behavior, reported by B.G.'s parents that the residential placement sought to address. The ALJ stated that "[t]he law reserves residential placement for circumstances where an ESE student is failing to make progress in school; when the school lacks the capacity to implement an IEP; or when the student cannot safely be transported to school. None of these circumstances has been shown to exist here." In fact, the ALJ held that Plaintiffs failed to show that B.G.'s placement at Sandy Pines was "educationally appropriate to his circumstances, let alone educationally necessary. All the persuasive evidence suggests that B.G.'s hospitalization at Sandy

9

Pines had nothing to do with B.G.'s education, nor was Sandy Pines his least restrictive environment, at any relevant time. (26).

Moreover, the ALJ noted that Defendant had acted quickly to develop a program for B.G. Even though Defendant had six months in which to develop an IEP, it commenced an IEP team immediately upon B.G.'s arrival in Palm Beach County. Defendant also offered B.G. the opportunity to enroll in the extended school year program, which would have allowed B.G. to immediately enroll at Indian Ridge and begin taking classes throughout the summer. B.G.'s parents declined this offer instead electing to send B.G. to a summer camp that had no programs to assist special needs children.

Finally, the ALJ noted that:

> [t]he atmosphere which surrounded the hearing in this case was highly charged and counterproductive to the spirit of trust and cooperation which IDEA promotes ... More specifically, both on and off the record, the G.s and their attorney expressed the view that Respondent's employees charged with the responsibility of enforcing the procedural and substantive requirements of IDEA have colored their testimony and subordinated the law and E.G.'s (sic) interest to save the expense of residential placement ... No evidence was presented to support Petitioner's view that Respondent's witnesses provided unreliable, let alone perjorious (*sic*) testimony in contravention of their oaths to tell the truth and their legal and moral obligations to their respective professions. (22)

**b.      Analysis**

In its independent review of the record, this Court must give due deference to the educational professionals who developed the IEP. *Devine v. Indian River County Sch. Bd.*, 249 F.3d 1289, 1292 (11th Cir. 2001); *J.S.K. v. Hendry Country School Bd.*, 941 F.2d 563, 1573 (11th Cir. 1991). Based on its independent review, this Court concludes that the ALJ was correct in her analysis and conclusion and that the Plaintiffs are not entitled to reimbursement for B.G.'s expenses while at Sandy Pines. The goal of the IEP team is to provide a FAPE in the least restrictive means. Since placement

10

in a residential facility is more restrictive than placement in a therapeutic day school and since the number and variety of services at Indian Ridge was greater than those offered in New York, Defendant was required to first attempt to implement the IEP without residential placement. Green Chimneys, the New York therapeutic day school lacked many of the programs and services found at Indian Ridge such as certified teachers, on-site clinical therapy, and programs specifically designed for the nearly 40% of SED students, like B.G., attending Indian Ridge.

In light of B.G.'s parents concerns about the day school program, the school agreed to institute a nine week trial period at Indian Ridge to assure B.G.'s educational success. During that period, the school promised to scrutinize B.G.'s progress to ensure that Indian Ridge, as opposed to a residential facility would provide B.G. with an education. Defendant also offered to help Plaintiffs obtain any relevant community resources available through an assigned caseworker who could coordinate services such as respite care, behavior management training, and at home therapy.

Finally, even though Plaintiffs moved from New York at the start of summer, Defendants offered to admit B.G. into the summer day school program immediately. B.G.'s parents, however, elected to forgo sending him to Indian Ridge and instead sent him to a regular summer camp and, eventually, committed him to a psychiatric hospital because of his behavior at home.[1]

Defendant is required by law to educate B.G., it is not, however, required to provide any other services that are not essential to B.G.'s education. The record shows that B.G. was making

---

[1] It is also important to note that Sandy Pines is not a residential educational facility, rather it is a hospital that has classrooms available because Martin County has a responsibility to educate any child that resides in the county. To fulfill that obligation, Martin County has contracted with Sandy Pines to provide an education to the residents. The New York IEP recommended that B.G. be placed in a residential educational facility, Sandy Pines is a hospital and not an educational facility. (235).

progress in the day program setting while in New York. His teacher reported that he had been working at his grade level and making consistent academic progress. Most telling is that B.G. made such progress at a school without many of the specialized programs offered at Indian Ridge. In fact, according to his teacher at Green Chimneys, B.G. was academically successful even without many of the accommodations required by his IEP such as a personal aide and implementation of a behavioral intervention plan. Even when B.G. was admitted to Sandy Pines, the educational component of his IEP never changed; Sandy Pines merely made an interim revision which added the homebound eligibility since B.G.'s parents had already voluntarily admitted B.G. at the institution. While at Sandy Pines, B.G. tested at or above grade level. (241).

Plaintiffs argue that placement at Sandy Pines was necessary because his at home behavior was so dangerous that it placed his life in jeopardy. They argue that the records from Sandy Pines and the testimony of Karen Fleming, Dr. Mallenbaum, Dr. Hofbauer, Dr. Greenfiled, Dr. Huttman, and Ms. Barsness conclusively show that B.G.'s conduct at home was so dangerous that he endangered his life. Plaintiffs then cite cases that argue that when a child is suicidal, then residential placement is necessary so that the child can receive an education.

After a careful review of the record, this Court agrees with the Defendant that there are no material issues of fact because Plaintiffs have mischaracterized the evidence. Although the evidence does show that B.G. had tantrums and displayed manipulative behavior, once school and hospital personnel discovered that ignoring B.G.'s attention seeking behavior caused him to stop acting out, he was a pleasant student who earned good grades and interacted well with his peers. At Sandy Pines, B.G. began to earn points and even progressed to a higher behavioral level for his good behavior. Dr. Huttman stated that B.G. acted out because "[y]ou think of a child who is seven years

old that's what they've learned, that's what they're used to doing ... some of it was appropriate for a seven year old ... he was motivated by getting what he wanted.  And if he didn't get what he wanted, then he would make demands, I want this now and throw a tantrum" (387-88).  Thus, Sandy Pines personnel had been teaching B.G. a new kind of behavior and B.G. responded appropriately.

Dr. Hutton testified that Sandy Pines recommended that B.G. be released in October because B.G.'s behavior was much improved and because it is a "very restrictive setting" and that "this child should have an opportunity to go out and thrive in the least restrictive setting."  (401).  Both Dr. Hutton and Karen Fleming, the Sandy Pines liaison, testified that B.G. was an appropriate candidate for the Indian Ridge school because most of B.G.'s bad behavior did not occur during the school day. For example, B.G. was never given any PRN's (additional mood stabilizers) during the school day. (243, 419).

For his progress to continue at home, B.G.'s parents needed to implement many of the behavioral modification techniques used at Sandy Pines through the transition plan.  The plan used community services to assist B.G.'s parents with B.G. at home each day and also included counseling for B.G. and his parents.  According to Dr. Huttman, however, B.G.'s parents did not follow the recommended plan; they did not attend the weekly parent counseling group after having been informed of the group and after having been encouraged to attend; they only attended the weekly parent therapy one time in person.  B.G.'s mother did call Dr. Hutton several times per week, but he stated that it would have been better to have in person meetings.

Finally, Dr. Mallenbaum, was never made aware of how B.G. had been progressing at Indian Ridge aside from information provided by B.G.'s parents and she based her recommendation for residential placement on B.G.'s prognosis and his parent's inability to control him at home without

13

having reviewed his medical records.  If he were placed in a residential facility, there was no need to change B.G.'s educational program.  She also testified that a therapeutic day school with community programs to assist the parents at home would be a less restrictive learning environment for B.G. but stated that she recommended residential placement because New York community services take at least six weeks to activate.  Since the programs available through the Defendant are more extensive than those available in New York and since Dr. Mallenbaum conceded that residential placement was more restrictive than a day program, Defendant was correct to implement B.G.'s IEP at Indian Ridge.

Although surely both B.G.'s parents and the school board wish to provide B.G. the best education possible, the school board is not required to provide the best education possible, but rather is only required to provide an appropriate education.  And although B.G.'s parents are permitted and encouraged to participate in the education decisions affecting B.G., the school board is not required to follow B.G.'s parents wishes at ever step, so long as BG is receiving a FAPE in the least restrictive means possible.  *Weiss v. School Bd. Of Hillsborough County*, 141 F.3d 990, 998 (11th Cir. 1998); *Hill v. School Vd. For Pinellas County*, 954 F.Supp 251, 254 (MD. Fla. 1997)("students do not have a right to be seated at a particular desk in a particular room at a particular school."); *School Bd. Of Martin County v. A.S.*, 727 So.2d 1071, 1074 (if a student progresses in the school district's program, courts must not determine whether a different method could confer a superior benefit).  Based on the forgoing, it is clear to this Court that Defendant did provide B.G. with a FAPE in the least restrictive means by placing B.G. at Indian Ridge.  Therefore, Defendant need not reimburse Plaintiffs for any expenses they incurred while B.G. was enrolled at Sandy Pines.

### III. Conclusion

The Court has considered the motion and the pertinent portions of the record, and based on the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that:

(1) Defendant's motion for summary judgment **[DE 57]** is GRANTED;

(2) Plaintiffs' motion for summary judgment **[DE 62]** is DENIED.

(3) Final judgment will be entered by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 26 day of January, 2007.

      /s/ Kenneth L. Ryskamp
    KENNETH L. RYSKAMP
    UNITED STATES DISTRICT JUDGE

Copies provided:
Counsel of record